

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

DENORVAL GILL,

              Petitioner,

    v.

ROBERT SCHIEDLER,

              Respondent.

Civil No. 07-6157-AC

FINDINGS AND RECOMMENDATION

DANIEL J. CASEY
P.O. Box 82818
Portland, OR 97282

        Attorney for Petitioner

JOHN R. KROGER
Attorney General
JACQUELINE SADKER
Assistant Attorney General
Department of Justice
1162 Court Street N.E.
Salem, OR 97301

        Attorneys for Respondent

1 - FINDINGS AND RECOMMENDATION -

ACOSTA, Magistrate Judge.

Petitioner brings this habeas corpus action pursuant to 28 U.S.C. § 2254. For the reasons that follow, the Second Amended Petition for Writ of Habeas Corpus should be DENIED.

## BACKGROUND

On June 5, 2000, a Multnomah County jury found Petitioner guilty of twenty-two counts of Compelling Prostitution, twenty-two counts of Promoting Prostitution, one count of Assault in the Fourth Degree, and one count of Attempted Promoting Prostitution. The primary victim testified that on numerous occasions Petitioner compelled her to engage in acts of prostitution, and that he would assault her, causing her physical injury. A second victim testified that Petitioner attempted to recruit her as a prostitute, but that she would not cooperate with him.

Petitioner testified that the primary victim was his girlfriend, that she made her living as a stripper, that he was never present during any of the times she claimed to have been working as a prostitute, that he never knew she was working as a prostitute, and that he never assaulted or threatened to assault her. The defense theory was that the primary victim fabricated the allegations because she was jealous and angry over her breakup with Petitioner. Petitioner also described a brief dating relationship with the other victim, but denied he ever attempted to recruit her as a prostitute.

At Petitioner's sentencing, he was represented by new counsel, who filed a motion for a new trial on the basis that the state failed to preserve a tape recording of a statement made by the second victim, and on the basis of alleged prosecutorial misconduct during opening statements. The trial judge denied the motion. On direct appeal, Petitioner challenged the denial of his motion for a new

trial. The Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. *State v. Richardson[1]*, 186 Or. App. 137, 63 P.3d 55, *rev. denied*, 335 Or. 402, 68 P.3d 232 (2003).

Petitioner then sought state post-conviction relief ("PCR"). Petitioner alleged trial counsel was ineffective for failing to object and move for a mistrial when the prosecutor made a prejudicial opening statement and also when it was revealed that the second victim's recorded statement had been erased after being transcribed by a police officer. Petitioner subsequently moved to amend his petition to allege a claim that trial counsel was ineffective for failing to argue against Petitioner's consecutive sentences. The PCR trial judge denied leave to amend and, after an evidentiary hearing, denied relief on the merits of the claims before it.

Petitioner appealed, raising three assignments of error: the two ineffective assistance claims and a claim that the PCR trial court's denial of leave to amend resulted in a violation of Petitioner's due process rights. The Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. *Gill v. Schiedler*, 210 Or. App. 756, 153 P.3d 178, *rev. denied*, 342 Or. 644, 158 P.3d 507 (2007).

On July 2, 2007, Petitioner filed this federal habeas corpus action. On June 28, 2008, court-appointed counsel filed a Second Amended Petition for Writ of Habeas Corpus alleging three claims for relief:

> **Ground One:** Petitioner was denied his right to effective assistance of counsel under the Sixth and Fourteenth Amendments, when his trial lawyers failed to object or move for a mistrial when the prosecutor, in his opening remarks to the jury,

---

[1] The indictment identified Petitioner as "James R. Richardson, Jr., aka Denorval Delon Gill."

stated, "As you know, Judge Gernant and the Grand Jury has charged the defendant with 22 counts of Compelling Prostitution."

**Ground Two:** Petitioner was denied his right to effective assistance of counsel under the Sixth and Fourteenth Amendments, when his trial lawyers failed to object or move for a mistrial when it became evident that a police officer had destroyed a tape containing the recorded statement of ... one of the witnesses and alleged victims.

**Ground Three:** Petitioner was denied his right to due process of law under the Fifth and Fourteenth Amendments, when the state post-conviction court denied petitioner's request for a continuance so he could amend his post-conviction petition and add a claim of ineffective assistance of counsel based on the faiulre to challenge his consecutive sentences under the rationale of *Blakely v. Washington*, 542 U.S. 296 (2004) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

Respondent argues that all three grounds for relief were raised and correctly rejected in state court decisions that are entitled to deference under 28 U.S.C. § 2254(d) and (e)(1).

## DISCUSSION

### I.    Legal Standards

When a petitioner has exhausted his federal claims, this Court may grant a writ of habeas corpus only if the state court proceeding: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d).

Section 2254(d)(1) applies to challenges to purely legal questions resolved by the state court, and section 2254(d)(2) applies to purely factual questions resolved by the state court. *Lambert v. Blodgett*, 393 F.3d 943, 978 (9th Cir. 2004), *cert. denied,* 546 U.S. 963 (2005).

Therefore, the question whether a state court erred in applying the law is a different question from whether it erred in determining the facts. *Rice v. Collins*, 546 U.S. 333 (2006).

Section 2254(d)(1) consists of two alternative tests, *i.e.*, the "contrary to" test and the "unreasonable application" test. *Cordova v. Baca*, 346 F.3d 924, 929 (9th Cir. 2003). Under the first test, the state court's "decision is contrary to clearly established federal law if it fails to apply the correct controlling authority, or if it applies the controlling authority to a case involving facts materially indistinguishable from those in a controlling case, but nonetheless reaches a different result." *Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir.) (citing *Williams v. Taylor*, 529 U.S. 362, 413-414 (2000)), *cert. denied*, 540 U.S. 968 (2003).

Under the second test, "'[a] state court's decision involves an unreasonable application of federal law if the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case.'" *Van Lynn v. Farmon*, 347 F.3d 735, 738 (9th Cir. 2003) (quoting *Clark*, 331 F.3d at 1067), *cert. denied*, 541 U.S. 1037 (2004). Under the "'unreasonable application clause . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly . . . [r]ather that application must be objectively unreasonable.'" *Clark*, 331 F.3d at 1068 (quoting *Lockyer v. Andrade*, 538 U.S. 63 (2003)). When evaluating whether the state decision amounts to an unreasonable application of federal law, "[f]ederal courts owe substantial deference to state court interpretations of federal law." *Cordova*, 346 F.3d at 929.

Under section 2254(d)(2), which involves purely factual questions resolved by the state court, "the question on review is whether an appellate panel, applying the normal standards of appellate review, could reasonably conclude that the finding is supported by the record." *Lambert*, 393 F.3d at 978; *see also Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir.) ("a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable"), *cert. denied,* 534 U.S. 1038 (2004). Section 2254(d)(2) "applies most readily to situations where a petitioner challenges the state court's findings based entirely on the state record. Such a challenge may be based on the claim that the finding is unsupported by sufficient evidence, . . . that the process employed by the state court is defective, . . . or that no finding was made by the state court at all." *Taylor*, 366 F.3d at 999 (citations omitted).

In examining the record under section 2254(d)(2), the federal court "must be particularly deferential to our state court colleagues . . . . [M]ere doubt as to the adequacy of the state court's findings of fact is insufficient; 'we must be satisfied that any appellate court to whom the defect [in the state court's fact-finding process] is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate.'" *Lambert*, 393 F.3d at 972 (quoting *Taylor,* 366 F.3d at 1000). Once the federal court is satisfied that the state court's fact-finding process was reasonable, or where the petitioner does not challenge such findings, "the state court's findings are dressed in a presumption of correctness, which then helps steel them against any challenge based on extrinsic evidence, *i.e.*, evidence presented for the first time in federal court." *Taylor*, 366 F.2d at 1000.

In conducting its review, the Court "look[s] to the last-reasoned state-court decision." *Van Lynn*, 347 F.3d at 738.   When a state court does not supply the reasoning for its decision, a federal court undertakes an independent review of the record to determine whether the state court decision was objectively unreasonable.  *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).

## II.    Analysis

### A.    Ineffective Assistance of Counsel

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel.   The Supreme Court's ruling in *Strickland v. Washington*, 466 U.S. 668 (1984) sets forth the "clearly established federal law" governing claims alleging ineffective assistance of counsel. *Williams*, 529 U.S. at 390.

Under *Strickland,* to prevail on a claim of ineffective assistance of counsel, Petitioner must show that (1) his counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense.  *Strickland*, 466 U.S. 668, 687 (1984); *Bell v. Cone,* 535 U.S. 685, 698-99 (2002); *Williams v. Taylor,* 529 U.S. 362, 390 (2000).  Failure to make the required showing on either prong defeats the ineffectiveness claim.

To prove deficiency of performance, a petitioner must demonstrate that counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688.  There is a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance.  *Id.* at 689.

To establish prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Bell,*

535 U.S. at 695; *Williams*, 529 U.S. at 390-91; *Strickland,* 466 U.S. at 687, 694. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Williams,* 529 U.S. at 391 (quoting *Strickland,* 466 U.S. at 694).

### 1.    Failure to Object to Prosecutor's Opening Statement

Petitioner alleges that in his opening statement at trial, the prosecutor said "[a]s you know, Judge Gernant and the Multnomah County Grand Jury has charged the defendant in this case with twenty-two counts of compelling prostitution." Petitioner argues his trial counsel's failure to object to this statement or immediately move for mistrial was constitutionally ineffective.

At the hearing on Petitioner's motion for a new trial, Petitioner's attorney provided a transcript which described the prosecutor's statement as follows:

> [Prosecutor]:  As you know, Judge Gernant and the Multnomah County Grand Jury has charged the defendant in this case with twenty-two counts of Compelling Prostitution.  For each one of those counts, you're going to hear about a specific act of prostitution.  You're going to hear about twenty-two different customers that [the primary victim] remembers in later March of this year.
>
> The Grand Jury has also charged twenty-two acts of Promoting Prostitution. These counts are going to be the same twenty-two acts of prostitution.

Respondent's Exhibit (hereafter "Resp. Exh.") 130, p. 9.

During the hearing, the parties and the trial judge listened to the tape recording of the prosecutor's opening statement, and engaged in the following colloquy:

> THE COURT:  Well, the unspoken thought there was -- and I must say, in reading the transcript yesterday I literally had to read the transcript five times to see what was being complained about, and then it finally jumped out at me.  But there was a pause after the words "Judge Gernant."  What I filled in in my head even when I read it was that as Judge Gernant has just told you and as the grand jury has charged.  But the tape doesn't support that to the extent the tape is accurate.

> [PROSECUTOR]:  Well, I would need to listen to it again, because I believe what is reflected in my notes that I prepared for opening statement and what I was intending to say is, as you know, "from Judge Gernant." I believe -- I believe if you listen that may actually be what I said, "from Judge Gernant that a Multnomah County grand jury has," which is a true statement.
>
> THE COURT:  Well, the question is whether the jury -- even if the jury understood that the words came out the way you're saying they came out, everybody would have understood the Judge was bringing the charge.

Sentencing Transcript (hereafter "Sent. Tr."), pp. 18-19.  The trial judge denied the motion for a new trial on this issue, ruling that, even if the prosecutor had said what petitioner alleged, juries generally "understand [that] charges are brought by prosecutors and grand jurors and not by courts." Sent. Tr., pp. 38-39.

The transcript that was subsequently prepared for the purposes of Petitioner's direct appeal differed from the one presented at the hearing on Petitioner's motion for a new trial.  According to the transcript prepared for the appeal, the prosecutor said: "As you know from Judge Grant [sic], the Multnomah County Grand Jury, has charged the defendant in this case with 22 counts of Compelling Prostitution."  Transcript, pp. 44-45.

The relevant portions of both transcripts were provided to the PCR court.  Petitioner did not, however, submit the actual audiotape.  The PCR judge reviewed the two transcripts and concluded Petitioner's evidence was not sufficient proof of his claim that the prosecutor made the alleged erroneous statement and that trial counsel was ineffective for failing to object or move for a mistrial.

The PCR court's decision was not contrary to or an unreasonable application of the principles announced in *Strickland*, because Petitioner cannot demonstrate prejudice.  There is no

indication that the criminal trial judge would have granted a mistrial had such a motion been presented earlier than the motion for a new trial. Indeed, in the hearing on Petitioner's motion for a new trial, the trial judge specifically found the prosecutor's statement did not rise to the level of misconduct and would not have significantly impacted the jury's ability to understand the source of the charges.

Moreover, the trial judge instructed the jury not to draw any adverse inferences about the accused based on anything other than the evidence that came into trial. The judge specifically instructed the jurors that "the opening and closing argument of the attorneys are not part of the evidence." Transcript, p. 38. He further cautioned the jurors "[y]ou must not interpret any statement, ruling, or remark that I may make during the trial as any indication that I have formed any opinion about the facts or outcome in this case." *Id.*

Petitioner did not establish a reasonable probability that, but for counsel's unprofessional errors, the result of his trial would have been different. As such, he is not entitled to habeas corpus relief in this court.

### 2.    Failure to Object Regarding Destroyed Tape Recording

Petitioner also alleges trial counsel rendered constitutionally ineffective assistance by failing to object and move for a mistrial when it was revealed that a tape recording of the second victim's statement had been erased after being transcribed by a police officer. Petitioner argues the officer acted in bad faith in destroying the tape in violation of Oregon law, and that trial counsel had grounds for arguing the destroyed tape was material and favorable because it would have shown inconsistencies in the second victim's testimony and undermined her credibility.

10 - FINDINGS AND RECOMMENDATION -

Destruction of the tape was raised as a ground for Petitioner's motion for a new trial. At the hearing on the motion for a new trial, the officer who destroyed the tape testified that he tape-recorded part of his interview, and that he recycled the tape immediately after he wrote his report, apparently as a matter of course.

The government has a duty to preserve material evidence, *i.e.*, evidence whose exculpatory value was apparent before it was destroyed and this is of such a nature that the defendant cannot obtain comparable evidence by other reasonably available means. *California v. Trombetta*, 467 U.S. 479, 489 (1984); *Grisby v. Blodgett*, 130 F.3d 365, 371 (9th Cir. 1997). Whether the police acted in good or bad faith is irrelevant to the analysis when the police destroy material exculpatory evidence. *Illinois v. Fisher*, 540 U.S. 544, 547 (2004). The analysis is different, however, if the evidence is only *potentially* useful; there is no due process violation unless there is bad faith conduct by the police in failing to preserve evidence. *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). Negligent failure to preserve potentially useful evidence is not enough to establish bad faith and does not constitute a violation of due process. *Grigsby*, 130 F.3d at 371.

Here, the mere possibility that counsel might have used the tape to impeach the witness at trial is not enough to establish that its exculpatory value was apparent to the officer at the time it was destroyed. *Arizona v. Youngblood*, 488 U.S. at 56. Moreover, Petitioner has not shown the officer acted in bad faith when he destroyed the tape after preparing his report. As such, Petitioner cannot prevail on his claim that counsel was inffective for failing to object, as he cannot establish prejudice.

Both the criminal trial judge (at the hearing on Petitioner's motion for a new trial) and PCR trial judge rejected Petitioner's claim. Upon an independent review of the record, the state courts' decisions were not contrary to or an unreasonable application of clearly established federal law, and they are entitled to deference in this court. Accordingly, Petitioner is not entitled to habeas corpus relief on this claim.

### B.    Due Process

Finally, Petitioner alleges the PCR court violated his due process rights when it denied his request for a continuance and to amend his PCR petition. Petitioner argues he should have been allowed a continuance and an opportunity to amend his PCR petition to allege trial counsel was ineffective for failing to object to the consecutive sentences under *Blakely* and *Apprendi*.

Pursuant to 28 U.S.C. § 2254(a), this court may entertain a petition for writ of habeas corpus from a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." The federal court's role in reviewing a habeas petition is "limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation." *Lambert v. Blackwell*, 387 F.3d 210, 247 (3rd. Cir. 2004); *see also Ortiz v. Stewart*, 149 F.3d 923, 939 (9th Cir. 1998) ("federal habeas relief is not available to redress alleged procedural errors in state post-conviction proceedings"), *cert. denied*, 526 U.S. 1123 (1999). As such, Petitioner's due process claim based

on the PCR trial court's refusal to allow a continuance or amendment is not properly before this court on habeas review.[2]

## RECOMMENDATION

For these reasons, the Second Amended Petition for Writ of Habeas Corpus should be DENIED, and a judgment of DISMISSAL should be entered.

## SCHEDULING ORDER

The above Findings and Recommendation are referred to a United States District Judge for review. Objections, if any, are due May 26, 2009. If no objections are filed, review of the Findings and Recommendation will go under advisement that date.

A party may respond to another party's objections within 10 days after service of a copy of the objections. If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or on the latest date for filing a response.

DATED this 12th day of May, 2009.

_____

John V. Acosta
United States Magistrate Judge

---

[2]In any event, Petitioner could not prevail on his ineffective assistance of counsel claims, as the Sixth Amendment right to jury principles expounded in *Apprendi* and *Blakely* do not apply to Oregon's statutory scheme allowing a judge to make the findings of fact necessary to the imposition of consecutive sentences for multiple offenses. *Oregon v. Ice*, 129 S.Ct. 711 (2009).

13 - FINDINGS AND RECOMMENDATION -